UNITED STATES *v.* J. SCHULTZ & Co. (No. 3518) [1]

---

[1] T. D. 45755.

United States Court of Customs and Patent Appeals, May 31, 1932

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred. J. Carter* of counsel) for appellee.

[Oral argument April 11, 1932, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appeal in this case involves the determination of the proper dutiable classification of certain glass syringes which were invoiced as "glass syringes with blue pistons, engraved," entered as "glass syringes, as surgical instruments," and classified by the collector under paragraph 218 (a) of the Tariff Act of 1930 and assessed with duty at 85 per centum ad valorem as "surgical articles and utensils of all kinds * * * wholly or in chief value of glass."

The importer protested the collector's classification and assessment of duty and claimed the merchandise to be dutiable at 60 or 70 per centum ad valorem under paragraph 359 of said act, claiming that the merchandise consisted of "* * * hypodermic syringes * * * in chief value of glass."

The United States Customs Court sustained the protest and held the merchandise dutiable at 70 per centum ad valorem under paragraph 359 as claimed.

In this court the claim by the appellee that the article is dutiable at 70 per centum under said paragraph 359 is wholly relied upon.

The material portions of the pertinent paragraphs follow:

PAR. 218. (a) Biological, chemical, metallurgical, pharmaceutical, and *surgical articles and utensils of all kinds*, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217, or subparagraph (e), finished or unfinished, *wholly or in chief value of glass*, 85 per centum ad valorem; * * *. (Italic ours.)

PAR. 359. *Surgical instruments, and parts thereof, including hypodermic needles, hypodermic syringes*, and forceps, composed wholly or in part of iron, steel, copper,

brass, nickel, aluminum, or other metal, finished or unfinished, 55 per centum ad valorem, *unless in chief value of glass, in which case the rate shall be 70 per centum ad valorem.* * * * *Provided,* That all articles specified in this paragraph, when imported, shall have the name of the maker or purchaser and beneath the same the name of the country of origin die sunk conspicuously and indelibly on the outside, or if a jointed instrument on the outside when closed. (Italics ours except last word.)

It will be noticed that paragraph 218 (a) provides for "surgical articles and utensils of all kinds, * * * wholly or in chief value of glass," and makes the same dutiable at 85 per centum, while paragraph 359 provides for "Surgical instruments ' * * * including hypodermic syringes" if "in chief value of glass," at 70 per centum ad valorem.

The merchandise is described in the opinion of the court below in the following language:

The merchandise in question is invoiced as "glass syringes with blue piston, engraved." It is of various sizes ranging from 5 to 100 "cc" (cubic centimeters), as stated on the invoice. The official sample of this merchandise (illustrative Exhibit A), which is identical with the imported articles, excepting as to color and size of some of the syringes, consists of a syringe entirely of glass, 4¾ inches long. The barrel is about three-fourths of an inch in diameter and is marked with graduations for about half its length, at intervals "2 4 6 8 10 cc." The piston fits closely inside the barrel, and is adapted to be drawn in or out for the purpose of taking in or expelling the contents, as required. The lower opening of the barrel is drawn into a point; the upper is closed by the top of the piston, which is finished with a knob or handle. Inclosed with illustrative Exhibit A is a metal hypodermic needle adapted to fit over the point or opening of the syringe. This needle is not in evidence and was not a part of the importation.

The syringes at bar are wholly of glass. Only two witnesses, one for the Government and one for the importer, testified.

Jacob Schultz, of appellee's firm, testified that the merchandise was hypodermic, blue piston syringes, the sample being of 10 cubic centimeters capacity. He stated that such syringes ranged from 2 cubic centimeters on up to 100 cubic centimeters; that the same included no metal and no needle and that the same could not be used without a needle which is placed on the sharp projecting portion of the syringe; that they are used by physicians and surgeons and that this particular syringe is known all over the world as a hypodermic Leur syringe, Leur being the name of a French doctor, and that they have been so used for 60 or 70 years; and that dentists do not use syringes of this construction.

Oscar O. R. Schwidetzky testified for the Government that he was a manufacturer of hypodermic needles and hypodermic syringes and that his business was located at Rutherford, N. J.; that he had manufactured and sold articles of this kind in America for 30 years and that he did experimental and research work in hospitals; that he lectured regularly, at the Post Graduate Hospital of New York and

at the Flower Hospital in New York, on the use of the merchandise which he had manufactured and sells throughout the United States; that he has written a book on the subject of the use of hypodermic instruments known as The Care and Use of Hypodermic Needles and Syringes; that Exhibit A is known as a Leur syringe; that they are sold as syringes; that the syringe and attachments are sold separately; that the attachment used on the syringe depends on the kind of use required; that for use in gonorrhea a rubber tip is used; that for removal of secretions from the cervix, a long metal catheter is used, and so forth; that certain tips are used for washing out cavities and wounds in minor surgery and others for washing out the lachrymal duct of the eye; that there is a difference between what is known as a hypodermic syringe and Exhibit A, which difference rests in the size entirely, the capacity of a hypodermic syringe being 1½ cubic centimeters or 2 cubic centimeters; that hypodermic syringes are made from metal and from glass and metal, are smaller in size than Exhibit A, and are used for a different purpose; that they are used by physicians and surgeons at hospitals and in private practice; that a 5 cubic centimeter syringe would not be a hypodermic—it would require too much force to use it; that if you should go into a drug store and ask for a hypodermic syringe "they would give you a hypodermic syringe, 2 cubic centimeters''; that syringes of the capacity of Exhibit A could be used for the purpose of extracting blood in blood tests and that a hypodermic syringe of 1 or 2 cubic centimeters would be too small and would not be suitable for this class of work.

Funk and Wagnalls' New Standard Dictionary defines "hypodermic" as follows:

hypodermic a. 1.   Of or pertaining to the area underneath the skin; introduced or found under the skin; as a hypodermic syringe or injection;   *   *   *.

In Webster's New International Dictionary is found the following:

hypodermic a. 1.   Of or pertaining to the parts under the skin.   Hypodermic syringe, a small syringe with a hollow needlelike point, used in hypodermic medication.

It is very doubtful if the syringe at bar could be regarded as a hypodermic syringe under any circumstances.   Under this record it does not respond to the common understanding of the term "hypodermic syringe."   However, we think it may be properly classed as a surgical instrument.   Therefore, as we see it, the pertinent inquiry is, Is it dutiable under paragraph 218 (a) as "surgical articles or utensils of all kinds," or under paragraph 359 as "surgical instruments?"

The question is not free from difficulty but we conclude that Congress must have intended that surgical articles wholly of glass, like the one at bar, should be dutiable under paragraph 218 (a). Paragraph 218 (a) is found in the Tariff Act of 1930 under schedule

2, which provides for earths, earthenware, and glassware. Paragraph 359 is found in schedule 3 relating to "Metals and Manufactures of." When considering the result of competition between the two paragraphs, the location of the paragraphs in the tariff act, while not controlling, may be of importance in ascertaining the legislative intent. *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254. Where the paragraphs are equally specific, and in the absence of other persuasive considerations, it would be more appropriate to place an all-glass surgical article in the glass schedule than in the metals schedule.

Furthermore, it seems to us that the natural construction of the language used in paragraph 359 would indicate that the all-glass article at bar should not be classified thereunder. It will be noted that the surgical instruments therein provided for are to be "composed wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal." We do not think the term "unless in chief value of glass" (although an article wholly of glass is in chief value of glass) was intended to prevail over the provision in the same sentence, "wholly or in part of iron [etc.]." To give the paragraph as a whole its natural and, we think, its intended meaning, it must be held that in order for an article to respond to the language used in the paragraph it must be wholly or in part of metal. An article which is in part of metal but is in chief value of glass would respond to the language, but an article wholly of glass would not

The proviso which requires that the article be "die sunk" would seem to further indicate the correctness of this conclusion, since the term "die sunk" ordinarily, or at least most frequently, applies to metals.

The record is silent as to the process used in placing the name of the maker or purchaser and the country of origin on the article. In the Government's brief it is stated that it is etched. The importer does not deny that it is etched but claims in its brief that while the record does not show how the words were placed on the instrument the article does meet the definition of being die sunk. An examination of the sample would seem to indicate that the names were put on by the process of etching.

For the reasons herein stated we conclude that the collector correctly classified and assessed duty on the merchandise. The protest should have been overruled, and the judgment of the United States Customs Court is *reversed*.